## THE "STEPHEN MORGAN."

1. A party who does not appeal from the final decree of a circuit court cannot be heard in opposition thereto, when the case is properly brought here by the appeal of the adverse party.
2. This court, concurring in opinion with the court below that both vessels were at fault, affirms the decree dividing the damages between them.

APPEAL from the Circuit Court of the United States for the District of Maryland.

The facts are stated in the opinion of the court.

*Mr. F. W. Brune* and *Mr. Arthur G. Brown* for the appellants.

*Mr. I. Nevitt Steele* and *Mr. Thomas W. Hall, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Parties who do not appeal from a final decree of a circuit court which is regular in form cannot be heard in opposition to the decree when the cause is removed here by the opposite party, unless it appears that the proceedings in removing the cause were unauthorized or irregular. They may be heard in support of the decree, and in opposition to every assignment of error filed by the appellants. *The William Bagaley*, 5 Wall. 377; *Harrison* v. *Nixon*, 9 Pet. 494; *Canter* v. *Insurance Company*, 3 id. 318.

Where the decree was in favor of the libellant in the District Court for a salvage service in saving goods at sea, this court held, on appeal here by the owners of the goods, that the decree was conclusive upon the libellant as to the amount of salvage awarded; that he could not, in the appellate court, claim any thing beyond that amount, since he had not, by any appeal on his part, controverted its sufficiency. *Stratton* v. *Jarvis & Brown*, 8 id. 10.

Compensation is claimed by the owner of the steamship "Carolina" from the schooner "Stephen Morgan," her apparel, tackle, and furniture, for injuries caused to the steamship by

the schooner in a collision which occurred between the two vessels during the early morning of the 3d of October, 1872, in the lower part of Chesapeake Bay, whereby, as the appellant alleges, the steamer was damaged to the amount of from $12,000 to $15,000.

Detailed description of the circumstances is given in the libel, from which it appears that the steamer, a vessel of eleven hundred tons burden, with a cargo of corn, was bound down the bay on a voyage from the port of Baltimore to Queenstown, Ireland, for orders, and that the schooner, a vessel of two hundred and fifty-nine tons, in ballast, was bound up the bay on a voyage from the port of New York to the port of Georgetown, in this district.  Both the steamer and the schooner were in a seaworthy condition, well manned and equipped, and the evidence shows that they had competent lookouts, and that their signal-lights were properly displayed.

Certain errors of statement are exhibited in the description of the circumstances attending the collision, as given in the libel ; but inasmuch as it is apparent that they were not made with intent to deceive, and that they did not have the effect to embarrass the opposite party or the courts below, they cannot have the effect to prevent the libellant from recovering just compensation for the injuries which the steamer received, if the evidence is sufficient to show that the decree below is correct upon the merits.

Process was issued ; and the owners of the schooner appeared as claimants, and filed an answer.

Matters of fact are the chief reliance of the respondents ; and, inasmuch as the allegations of the answer show, in the judgment of the court, that the schooner was in fault, they will be given in considerable fulness.

Prior to the collision, the mate had charge of the deck of the schooner ; and the respondents allege that the weather was fair, and that it was clear overhead, with a slight mist or haze on the water ; that the wind, from about southwest-by-south, was blowing a fresh and steady breeze ; that the schooner was on her port tack, with all her sails set, except her main top-sail and jib top-sail ; that her speed was about seven or eight knots an hour ; that the mate, about ten minutes after he took charge

of the deck, directed the man at the wheel to change the course
of the schooner from north-by-west-half-west to north-by-west,
which, as the respondents allege, was her proper course up the
bay.   Ten minutes later, as the respondents allege, the lookout
saw a bright light ahead, about a point or a point and a half
on the starboard bow of the schooner, and that the mate, who
was standing aft to the leeward of the spanker-boom, saw the
light about the same time, and looked at it through the glass.
Though the morning was clear, the mate came to the conclu-
sion that the vessel showing the light was at anchor, because
he could only see the white light, and he thought the vessel
was distant about a mile and a half, or two miles.

Estimates of the kind are necessarily more or less uncertain;
but the answer states that the schooner was then a little above
the light-house, and nearer to the western than the eastern shore
of the bay; and the respondents admit that the schooner had
plenty of room to sail and manœuvre on each side of the place
where the vessel showing the light appeared to be at anchor.
When the mate first looked at the light, he told the man at the
wheel that it was a ship at anchor, and he directed the helms-
man to let the schooner luff about a point; and that being done,
the statement is, that the light was brought to bear about two
points on the schooner's starboard bow.   Both of those orders
were promptly obeyed; and the answer states that the helms-
man, after the order to luff was executed, steadied the schooner,
and "let her run" for a short time; when the mate, thinking
that the schooner might not fairly clear the ship, told the man
at the wheel to luff a little more, so as to allow plenty of
room.

Throughout those manœuvres, both the mate and the look-
out of the schooner supposed that the light ahead was shown by
a vessel at anchor; and they never discovered their mistake
until the steamer approached so near that they could see her
smoke-stack without the aid of the glass.   Alarm and confusion
immediately ensued on the deck of the schooner, as sufficiently
appears from the allegations of the answer.   Obviously the
peril was imminent; and the answer states that the mate, fear-
ing that a collision would occur, ordered the helmsman to put
the wheel hard a-port; and that the master came on deck at

that moment, and asked the mate what was the matter; and being told that there was a light on the lee bow, the master looked under the boom, and, having seen the light, ordered the wheel to be put hard down, which was immediately done. Under the order given just before by the mate, the wheel had been turned only a few spokes to port, when the master gave the order to put the wheel hard down, which being promptly obeyed, the schooner began to luff; and at the moment of collision, which presently ensued, she was still coming into the wind, and her sails were shaking. Almost immediately after the helm of the schooner was put hard a-starboard the collision occurred, the schooner striking the steamer abaft the fore-rigging and a little forward of midships.

Testimony was taken on both sides; and the parties having been fully heard, the District Court decided that both vessels were in fault, and that the joint loss and damage should be equally divided between the owners of the two vessels. Pursuant to that decretal order, the loss and damage sustained by each were ascertained, and a final decree rendered in favor of the libellant, for the sum of $5,295, with costs and interest. Immediate appeal was taken by both parties to the Circuit Court, where additional testimony was taken; and the parties having been again fully heard, the Circuit Court reduced the damages to be awarded, and in all other respects affirmed the decree of the District Court. Due appeal to this court was taken by the respondents; but the libellant acquiesced in the decree of the Circuit Court.

Two errors, it is alleged by the appellants, were committed by the Circuit Court, as follows: 1st, That the court erred in awarding damages to the libellant, inasmuch as the allegations of the libel, if true, showed that the alleged collision could not have occurred. 2d, That the court erred in adjudging that the schooner was in fault.

Substantial accuracy in pleading should be observed by the libellant; and it is proper to remark, that a departure from that requirement, with intention to deceive, may constitute a bar to recovery, unless the faulty party is relieved from its consequences by leave of the court. Defects of the kind, when discovered, should be cured by amendment in all cases where the imperfection is calculated to deceive or mislead.

Incorrect allegations as to the position and course of the steamer are doubtless contained in the libel; but it does not appear that the inaccuracies were intended to deceive, or that they had the effect to mislead, the opposite party or the court. Specific objection to the libel on that account was not taken in the answer, nor does it appear that the errors in the allegations occasioned any embarrassment to the respondents in preparing the case for hearing.

Material errors undoubtedly occurred in the libel, but the respondents corrected the same in their answer; and, inasmuch as the hearing upon the merits was full in each of the courts below, the court here is not inclined to sustain that defence. *The Syracuse*, 12 Wall. 173.

Much discussion of the second defence is unnecessary, as both the proofs and the allegations of the answer show that the schooner violated the sailing rules enacted by Congress. Steamships, under the circumstances described, are required to keep out of the way of sailing-ships; but the correlative rule is, that the sailing-ship shall keep her course, subject to certain qualifications, which have no application in the cause before the court.   13 Stat. 61.

Sailing-vessels approaching a steamer are required to keep their course, on account of the correlative duty of the steamer to keep out of the way, in order that the steamer may know the position of the object to be avoided, and that she may not be baffled or led into error in her endeavor to comply with the requirement.  *Steamship Company* v. *Rumball*, 21 How. 384.

Three changes of course were made by the schooner, in violation of that rule, which is all that need be remarked on the subject, except to say that the failure of the steamer to perform her duty to keep out of the way is no defence for the schooner in violating the express command of the sailing rule.   Beyond all doubt, the steamer might have kept out of the way; and it is clear that the decree below, adjudging both vessels in fault, was correct.   All that the steamer did in the outset was to change her course one point; and the evidence satisfies the court that, if she ever did any thing more to prevent a collision, it was not done in season to be of any avail.   Porting the helm a point when the light of a sailing-vessel is first observed, and then

waiting until a collision is imminent before doing any thing further, does not satisfy the requirements of the law. *The Carrol*, 8 Wall. 302.

Other support to that conclusion might be invoked ; but it is quite unnecessary, as the owner of the steamer did not appeal, and cannot be heard, except in defence of the decree. *Airey* v. *Morrill*, 2 Curt. C. C. 8; *Allen* v. *Hatch*, 2 id. 147 ; *Chittenden* v. *Brewster*, 2 Wall. 196 ; *The Quickstep*, 9 id. 672.

Both vessels having been in fault, the settled rule in this court is, that the damages must be divided. *The Atlas*, 93 U. S. 319.

Viewed in any light, it is clear that the decree below was correct, and that there is no error in the record.

*Decree affirmed.*