## CHEROKEE NATION *v.* BLACKFEATHER.

### APPEAL FROM THE COURT OF CLAIMS.

No. 671. Argued and submitted October 18, 1894. — Decided November 19, 1894.

A stipulation on the part of the Cherokees in an agreement made by them with the Shawnees under authority of the act of October 1, 1890, c. 1249, 26 Stat. 636, that the Shawnees in consideration of certain payments by them, etc., "shall be incorporated into and ever after remain a part of the Cherokee Nation on equal terms in every respect and with all the privileges and immunities of native citizens of said Cherokee Nation," secured to the Shawnees equal rights with the Cherokees in that which was the common property of the Cherokee Nation, namely, the reservation and the outlet as well as all profits and proceeds thereof.

Without an appeal taken, a party will not be heard in an appellate court to question the correctness of the decree in the trial court.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Dodge* for the United States, submitted on his brief.

*Mr. Charles A. Maxwell* and *Mr. George S. Chase* for the Cherokee Nation, appellant, submitted on their brief.

*Mr. Charles Brownell* for Blackfeather, appellee.

MR. JUSTICE BREWER delivered the opinion of the court.

This case is similar to that just decided in which the same parties were appellants, and Charles Journeycake, Principal

Chief, etc., defendant.  The petition was filed under the authority of the same act of October 1, 1890, c. 1249, 26 Stat. 636, and to enforce the claim of the Shawnee Indians domiciled in the Cherokee Nation to an equal interest in the Cherokee reservation and outlet, and the proceeds and profits thereof.

In pursuance of article XV of the treaty of July 19, 1866, 14 Stat. 799, 803, an agreement was, on June 7, 1869, entered into between the Shawnees and the Cherokee Nation, through their representatives, the substantial portions of which are as follows :

" Whereas the Shawnee tribe of Indians are civilized and friendly with the Cherokees and adjacent tribes, and desire to settle within the Cherokee country on unoccupied lands east of 96° : It is, therefore, agreed by the parties hereto that such settlement may be made upon the following terms and conditions, viz. : That the sum of five thousand dollars belonging to the Shawnee tribe of Indians and arising under the provisions of treaties between the United States and the said Shawnee Indians as follows, viz., for permanent annuity for educational purposes, per fourth article of treaty 3d of August, 1795, and third article treaty 10th of May, 1854, one thousand dollars ; for interest at five per cent on forty thousand dollars for educational purposes, per third article of treaty 10th of May, 1854, two thousand dollars ; for permanent annuity in specie for educational purposes, per fourth article of treaty 29th of September, 1817, and third article 10th of May, 1854, two thousand dollars, shall be paid annually to the Cherokee Nation of said Indians, and that the annuities and interests as recited and the investment or investments upon which the same are based shall hereafter become and remain the annuities and interest and investment or investments of the Cherokee Nation of Indians, the same as they have been the annuities and interest and investments of the Shawnee tribe of Indians. And that the sum of fifty thousand dollars shall be paid to the said Cherokees as soon as the same shall be received by the United States for the said Shawnees from the sales of the lands in the State of Kansas known as the absentee Shawnee lands in accordance with the resolution of Congress approved

April 7, 1869, entitled ' A resolution for the relief of settlers upon the absentee Shawnee lands in Kansas,' and the provisions of the treaty between the United States and the Shawnee Indians concluded May 10, 1854, and also that the said Shawnees shall abandon their tribal organizations.

" And it is further agreed by the parties hereto that in consideration of the said payments and acts agreed upon as hereinbefore stated that the said Cherokees will receive the said Shawnees — referring to those now in Kansas and also to such as properly belong to said tribe who may be at present elsewhere and including those known as the absentee Shawnees now residing in the Indian Territory — into the country of the said Cherokees upon unoccupied lands east of 96°, and that the said Shawnees shall be incorporated into and ever after remain a part of the Cherokee Nation on equal terms in every respect and with all the privileges and immunities of native citizens of said Cherokee Nation : *Provided*, That all of the said Shawnees who shall elect to avail themselves of the provisions of this agreement shall register their names and permanently locate in the Cherokee country, as herein provided, within two years from the date hereof; otherwise they shall forfeit all rights under this agreement."

The rights of the petitioners are to be determined by this agreement in the light of article XV of the treaty. The principal difference between this contract and that made between the Cherokees and the Delawares consists in the fact that in this there is no provision for the purchase of " homes " or any payment of moneys on account thereof into the national fund of the Cherokees ; but, nevertheless, there is the express stipulation " that the said Shawnees shall be incorporated into and ever after remain a part of the Cherokee Nation, on equal terms in every respect, and with all the privileges and immunities of native citizens of said Cherokee Nation."

For the reasons stated in the opinion in the former case it must be held that this stipulation secured to the Shawnees equal rights with the native Cherokees in that which was the common property of the Cherokee Nation, to wit, the reservation and the outlet, as well as all profits and proceeds thereof.

So far, therefore, as the appellants are concerned, there was no error in the decree.

There is an application by the appellee for a modification of the decree increasing the sums awarded per capita to the Shawnees. It is enough to say in reference to this application that no appeal was taken by the appellee. Without an appeal, a party will not be heard in an appellate court to question the correctness of the decree of the trial court. *The Stephen Morgan*, 94 U. S. 599.

The decree of the Court of Claims is

*Affirmed.*