### SANTA MARINA CO. v. CANADIAN BANK OF COMMERCE. *

(Circuit Court of Appeals, Ninth Circuit.   October 22, 1918.)

No. 3113.

1. CORPORATIONS ☞402—REPRESENTATION BY OFFICER—BANK CHECKS—INDORSEMENTS.

Indorsements of checks by a corporation's secretary are all in effect in the name of payee corporation by its secretary, though, in some, "Company" is abbreviated to "Co.," and "Secretary" to "Secy.," or "Sec."

2. CORPORATIONS ☞432(12)—SECRETARY—AUTHORITY TO INDORSE CHECKS—EVIDENCE.

Evidence *held* to show that secretary of corporation, with knowledge and consent of its president and board of directors, was authorized to indorse checks payable to it, as for five years he did.

3. BILLS AND NOTES ☞149—CHECKS—NEGOTIABILITY—"GENERAL INDORSEMENT."

Checks with "general indorsement," defined by Civ. Code Cal. § 3112, as one by which *no* indorsee is named, are negotiable instruments.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Indorsement.]

4. CORPORATIONS ☞414(4)—AUTHORITY OF SECRETARY—INDORSING CHECKS.

Authority of secretary of a corporation to indorse in blank checks payable to it was not limited by the mere fact that its president and board of directors supposed he deposited them with its bank.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied February 10, 1919.

5. BANKS AND BANKING ⊜⟿130(3)—CHECKS—DEPOSITS.

    Secretary of corporation having authority to indorse in blank checks payable to it, title to checks so indorsed passed on delivery to his bank, when tendered by him to it for deposit to his own account, unless it had timely notice that he had no title, or it acted in bad faith in receiving them.

6. BANKS AND BANKING ⊜⟿130(3)—DEPOSITS—ESTOPPEL.

    A corporation, which gives its secretary authority to indorse in blank checks payable to it, is estopped to recover of his bank, which acted in good faith in receiving them for deposit to his account.

7. APPEAL AND ERROR ⊜⟿1033(7)—MATTERS REVIEWABLE.

    Appeal from decree by plaintiff alone brings up for review only what was decided adversely to him, and not whether decree, so far as favorable to him, was erroneous.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Benj. F. Bledsoe, Judge.

Suit in equity by the Santa Marina Company against the Canadian Bank of Commerce. From a decree for part only of the amount claimed (242 Fed. 142), plaintiff appeals. Affirmed.

E. W. McGraw and J. E. Barry, both of San Francisco, Cal., for appellant.

Gavin McNab, R. P. Henshall, and Nat Schmulowitz, all of San Fransciso, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. This is a suit in equity, in which the appellant, the Santa Marina Company, as plaintiff, brought suit against the appellee, the Canadian Bank of Commerce, as defendant, to obtain a decree declaring the defendant the trustee of a fund amounting to $6,775.98.

One R. T. Hooper was the secretary of the plaintiff corporation from September 21, 1906, until he resigned, on March 17, 1913. During this period the plaintiff was the owner of two pieces of property located in the city of San Francisco. One piece is referred to in the testimony as the "Santa Marina Building"; the other, as the "Front Street Building." The first yielded to the plaintiff an income from rentals amounting approximately to $4,000 per month; the other rental amounting to about $300 per month. Two real estate firms in San Francisco acted as the agent of the plaintiff in collecting the rents from these two buildings, respectively; the rents being paid in checks drawn by the agents in favor of the plaintiff, and delivered to Hooper as secretary of the plaintiff. His function was to indorse these checks and deposit them to the credit of the plaintiff in its bank, which at first was the Mercantile Trust Company of San Francisco, and afterwards the Mercantile National Bank of San Francisco. His failure to so deposit 21 ·checks, amounting to $6,775.98, and his action in depositing them to his own credit with the defendant, has given rise to the present controversy.

These 21 checks are identified as having been drawn by Bovee, Toy & Co., plaintiff's agent in collecting the rents from the Front Street

Building. They were drawn in favor of plaintiff on the Bank of California, and delivered to Hooper as the secretary of the plaintiff, who indorsed them in blank in plaintiff's name and deposited them to his own credit in the defendant bank. The defendant in the usual course of business passed these checks through the clearing house, and they were paid by the Bank of California. The first check was deposited by Hooper with the defendant on December 31, 1907, and the last on March 23, 1911. Hooper was elected secretary of the plaintiff September 21, 1906, and resigned March 17, 1913. The plaintiff did not discover that Hooper had deposited these checks with the defendant until April 2, 1913. This suit was commenced January 26, 1914.

[1] In the allegations of the complaint it is alleged that each check was drawn in favor of the Santa Marina Company. In 12 checks, the indorsement appeared to be the "Santa Marina Company," and in 9 the indorsement is "Santa Marina Co." It is alleged with respect to each separate check that the indorsement was made by R. T. Hooper, and it so appears in the indorsements set out in the record. In 5 indorsements R. T. Hooper adds the title of his authority as "Secretary"; in 11 he abbreviates it as "Secy.," and in 3 as "Sec." These variations in the form of the indorsements on the checks are of no significance in the routine of passing title to checks in the banking business. They were all in effect the indorsements of the name of the "Santa Marina Company, by R. T. Hooper, Secretary," and would be so recognized in any business transaction.

[2, 3] This is a suit in equity, in which the plaintiff seeks to recover upon the charge that the defendant was a trustee for the plaintiff for the sums of money represented by these checks. To raise such a trust it was necessary for the plaintiff to allege that Hooper, without the knowledge and consent of the plaintiff, had indorsed the checks in the name of the plaintiff and deposited them to his own credit with the defendant. It was also necessary to allege that the defendant, well knowing that said checks and the moneys they represented were the property of the plaintiff, placed the same to the personal account of Hooper. In the complaint the plaintiff so alleges with respect to each of the checks. In defendant's answer these allegations are specifically denied, raising an issue which we think is the controlling question in this case.

Hooper was the secretary of the plaintiff, and in that capacity he indorsed the checks. Mr. E. W. Hopkins, the president of the plaintiff corporation during the time Hooper was its secretary, testified that the duties of the latter "were to take care of the accounts of the corporation and take care of its cash, etc." He supposed that Hooper's authority as secretary "was the usual authority that secretaries have." The by-laws of the corporation provided that the board of directors should elect a secretary, whose duties were specified in several particulars; among other things it was provided:

"He shall keep proper account books, countersign all checks drawn upon the treasury, and discharge such other duties as pertain to his office and are prescribed by the board of directors."

Hopkins testified:

"I must have known that he [Hooper] was receiving checks from Bovee, Toy & Co. on account of the rents. The money of the Santa Marina Company was supposed to be deposited with the Mercantile Trust Company, and subsequently with the Mercantile National Bank. No other place was authorized for such deposits. I cannot tell you whether authority was given Hooper to indorse checks of the Santa Marina Company with the Mercantile National Bank, specially by resolution, or not. * * * I believed he was indorsing checks and depositing them with the Mercantile National Bank. I never objected to his doing so. do not know if any other director objected to it."

H. A. Coggins, a director of the plaintiff corporation and the successor of Hooper as its secretary, testified that he "believed Hooper had no authority to deposit checks with the Canadian Bank of Commerce," and he believed Hooper was "supposed to deposit all checks in the Mercantile National Bank." That Hooper was authorized to indorse checks with the knowledge and consent of the president and board of directors of the corporation is established by this testimony, and by the fact that he did so in transacting plaintiff's business for the period of more than five years. The checks deposited with the defendant by Hooper were negotiable instruments. The indorsements were general (section 3112, California Civil Code), and were made by authority.

[4, 5] It is true plaintiff's president and board of directors supposed Hooper deposited the checks with plaintiff's banks, but this was far from so limiting his authority. His authority to indorse the checks in blank was complete. Where he should deposit the checks was another matter, concerning which there was no express restriction. Plaintiff's officers may have supposed that they had limited his authority to the depositing of the checks in plaintiff's bank, but there is no evidence that they actually did so, or that they required him to so indorse plaintiff's checks. It follows that, when Hooper tendered the checks in question to the defendant for deposit to the credit of his own account, the title passed on delivery, unless defendant had timely notice that Hooper had no title to them, or there was some act of bad faith on the part of the defendant in receiving the checks. There is no such evidence in the record.

In Murray v. Lardner, 2 Wall. (69 U. S.) 110, 17 L. Ed. 857, the Supreme Court had before it the question of the title to certain coupon bonds payable to bearer, which had been stolen from the defendant in error and pledged to the plaintiff in error for a loan. The court reviewed the decisions upon the transfer of commercial or negotiable paper, and concluded by stating the following propositions:

"The possession of such paper carries the title with it to the holder. 'The possession and title are one and inseparable.' The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world.

"Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part."

In Hotchkiss v. National. Bank, 21 Wall. (88 U. S.) 354, 359, 22 L. Ed. 645, the controversy also related to the title to certain coupon bonds stolen from the owner and pledged as collateral securities. The court said:

"The law is well settled that a party who takes negotiable paper before due for a valuable consideration, without knowledge of any defect of title, in good faith, can hold it against all the world. A suspicion that there is a defect of title in the holder, or a knowledge of circumstances that might excite such suspicion in the mind of a cautious person, or even gross negligence at the time, will not defeat the title of the purchaser. That result can be produced only by bad faith, which implies guilty knowledge or willful ignorance, and the burden of proof lies on the assailant of the title. It was so expressly held by this court in Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857."

In Shaw v. Railroad Co., 101 U. S. 563, 25 L. Ed. 892, the controversy related to an indorsed bill of lading. For the purpose of distinguishing the transfer of such an instrument from the transfer of a bill of exchange or promissory note, the court said of the latter:

"They are representatives of money, circulating in the commercial world as evidence of money, 'of which any person in lawful possession may avail himself to pay debts or make purchases or make remittances of money from one country to another, or to remote places in the same country. Hence, as said by Story, J., it has become a general rule of the commercial world to hold bills of exchange as in some sort sacred instruments in favor of bona fide holders for a valuable consideration without notice.' Without such a holding they could not perform their peculiar functions. It is for this reason it is held that if a bill or note, indorsed in blank or payable to bearer, be lost or stolen and be purchased from the finder or thief, * * * the bona fide purchaser may hold it against the true owner. He may hold it, though he took it negligently, and when there were suspicious circumstances attending the transfer. Nothing short of actual or constructive notice that the instrument is not the property of the person who offers to sell it—that is, nothing short of mala fides—will defeat his right. The rule is the same as that which protects the bona fide indorser of a bill or note purchased for value from the true owner. The purchaser is not bound to look beyond the instrument."

In Swift v. Smith, 102 U. S. 442, 444, 26 L. Ed. 193, the question related to the transfer of an indorsed promissory note. The Supreme Court said:

"One who purchases such paper from another, who is apparently the owner, giving a consideration for it, obtains a good title, though he may know facts and circumstances that cause him to suspect, or would cause one of ordinary prudence to suspect, that the person from whom he obtained it had no interest in it, or authority to use it for his own benefit, and though by ordinary diligence he could have ascertained those facts. * * * He can lose his right only by actual notice or bad faith."

In First National Bank v. Moore, 148 Fed. 953, 78 C. C. A. 581, in this court, the question related to the title to certain promissory notes alleged to have been given to the original holder without consideration. Assigned to the plaintiff in error, the question was whether the purchaser was deprived of his character of purchaser in good faith by proof that he took the note with knowledge of such circumstances as ought to have put an ordinary man on inquiry to ascertain the facts. The court cites a number of cases, among others Murray v. Lardner, supra, and Hotchkiss v. National Bank, supra, to the effect that to defeat a recovery by an indorsee of a promissory note for value before

maturity, on the ground that the note was given without consideration or was obtained by fraud, the burden rests upon the indorsee to prove that the holder had knowledge of such fact or was chargeable with bad faith.

There is no evidence that defendant had any notice that the checks deposited by Hooper were not his property, and there is no evidence of bad faith on the part of the defendant in the transaction. Upon the controlling question in the case plaintiff has therefore failed to furnish the proof required to sustain the action.

[6] There is, moreover, a well-established principle of equitable estoppel applicable to this case. It is found in numerous cases. In the leading case of McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341, the Court of Appeals of New York states it as follows:

"That where the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over, the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected.

"Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

In Cluett v. Couture, 140 App. Div. 830, 125 N. Y. Supp. 813, it was held that, where a principal granted full power to his agent to indorse checks in blank by writing the principal's name on the back without any restrictive words, but required him to deposit them in a bank to the credit of the principal, any departure by the agent from the authority was a mere diversion of a negotiable instrument from an authorized use, and where a loss occurred it must fall on the principal, rather than on the holder, who took the check in good faith and without any information or knowledge that the agent did not have authority to use the check for the purpose and in the manner in which he used the same.

The same principle is stated more concisely, but with equal clearness, by Mr. Justice Day, speaking for the Supreme Court, in National Safe Deposit Co. v. Hibbs, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. Ed. 1241:

"In such case we think the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible."

In the late case of Arcade Realty Co. v. Bank of Commerce (Cal. App.), the court applied this doctrine in a case almost identical with the present case. The syllabus of that case is as follows:

"Where the owner of a building knowingly permits its agent to indorse its name upon checks given in payment of rent, and to deposit them in his own bank, the agent thereafter remitting by his personal check, and this practice continued over a period of 16 months, the owner created and vested in such agent ostensible authority to indorse its name upon the checks, and the bank making payments on the checks so indorsed would not be liable to such owner."[1]

The plaintiff, through mistaken confidence in Hooper, gave him authority as its secretary to indorse checks without restriction, which

[1] For new opinion by California Supreme Court, see 181 Pac. 66.

made the wrong possible in these transactions, and under the rule of equitable estoppel it cannot recover.

[7] The decree of the court below is in accordance with the law of negotiable paper and the rule of equitable estoppel as here stated, except as to certain checks, amounting in the aggregate to $1,666.35, for which a decree was entered in favor of the plaintiff. As to these checks, the court found that they were deposited at a time when Hooper was indebted to the defendant bank in certain overdrafts, and that the defendant appropriated the proceeds of such checks in satisfaction of such overdrafts, thereby becoming liable to plaintiff in that amount.

From this decree both parties to the suit had the right to appeal to this court. Plaintiff appealed. The defendant did not. An appeal brings up for review only that which was decided adversely to the appellant. Loudon v. Taxing District, 104 U. S. 771–774, 26 L. Ed. 923; Cherokee Nation v. Blackfeather, 155 U. S. 218–221, 15 Sup. Ct. 63, 39 L. Ed. 126; Field v. Barber Asphalt Paving Co., 194 U. S. 618–621, 24 Sup. Ct. 784, 48 L. Ed. 1142; Southern Pine Co. v. Ward, 208 U. S. 126–137, 28 Sup. Ct. 239, 52 L. Ed. 420; O'Neil v. Wolcott Mining Co., 174 Fed. 527–535, 98 C. C. A. 309, 27 L. R. A. (N. S.) 200; Swager v. Smith, 194 Fed. 762–765, 114 C. C. A. 482; Sanborn-Cutting Co. v. Paine, 244 Fed. 672–681, 157 C. C. A. 120.

The correctness of that part of the decree in favor of the plaintiff for $1,666.35 is therefore not a question before this court.

This conclusion renders it unnecessary for us to consider the defense that the plaintiff is chargeable with laches in the prosecution of this suit, and the further defense that plaintiff's claim has been fully satisfied in certain direct suits and judgments against Hooper.

The decree of the lower court is affirmed.

GILBERT and HUNT, Circuit Judges, concur in the result.