## TRINITY PORTLAND CEMENT CO. v. BASS FOUNDRY & MACHINE CO. et al.

Circuit Court of Appeals, Sixth Circuit.
May 8, 1928.

No. 5047.

1. Receivers ⬦128—Recitals in order for receivers' certificates and in certificates issued thereunder held sufficiently explicit to give certificates preferential status against unsecured claims.

Where order provided that receivers' certificates thereby authorized should "be in the form and tenor comparable to securities of this character as heretofore approved by this court," and should "be given the priorities customarily accordèd to such securities by law," and certificates recited that they were entitled to benefits and securities specified in the order, and that in case of sale of corporation's property certificates should be paid in full, with interest at or before confirmation of sale, *held* that recitals were sufficiently explicit to give certificates a preferential status against unsecured claims.

2. Receivers ⬦128—Order restoring property to corporation and authorizing mortgage held to reserve power to court to give receivership creditors precedence over mortgage.

Where, after appointment of receivers, property of corporation was ordered returned to it with authority to execute mortgage thereon to carry out plan of refinancing on condition that mortgage should be subject to court's power to retake property at any time if necessary to protect or pay claims of receivership creditors, court thereby reserved to itself power to give claims of receivership creditors precedence over any mortgage that might be executed.

3. Receivers ⬦128—Mortgage bonds issued under refinancing plan on restoration of property by receivers held ineffective as liens on failure of conditions on which mortgage was approved, and not prior lien over receiver's certificates.

Where plans for refinancing corporation in receivership and order restoring property to corporation contemplated that effectiveness of reorganization and of mortgage authorized to be executed thereunder should be contingent on exchange of mortgage bonds for all outstanding prereceivership claims, or at least a sufficient number to "lift the receivership," *held* that, on failure to fulfill such conditions, court properly declared mortgage was not effective, even as to those who had accepted the bonds, and that receivership certificates took precedence over bonds, regardless of whether assets retained by receivers with proceeds from work in progress would have been sufficient, if prudently administered, to discharge receivership obligations.

4. Appeal and error ⬦879—Party failing to appeal held not entitled to object to decree in appellate court.

Party who failed to respond to appellant's demand to join in appeal from District Court's decree, and who took no separate appeal after order of severance was entered against him, was not entitled to be heard by appellate court in objection to decree.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Creditor's bill against the East Iron & Machine Company resulting in appointment of receivers, in which the Trinity Portland Cement Company filed a cross-bill. From an adverse decree, the Trinity Portland Cement Company, opposed by the Bass Foundry & Machine Company and others, appeals. Affirmed.

George D. Welles, of Toledo, Ohio, and Jerome C. Fisher, of Cleveland, Ohio (Tracy, Chapman & Welles, of Toledo, Ohio, and Thompson, Hine & Flory, of Cleveland, Ohio, on the brief), for appellant.

E. G. Davies, of Toledo, Ohio, as amicus curiæ.

B. H. Davis, of Cleveland, Ohio (Treadway & Marlatt, of Cleveland, Ohio, on the brief), for appellee Union Trust Co.

Alemon F. Hanson, of Toledo, Ohio, for appellee Merriman.

Leslie Reid, of Lima, Ohio, for appellees Lima Trust Co. and Metropolitan Bank.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. Upon a creditor's bill receivers were appointed for the East Iron & Machine Company by the District Court. Shortly thereafter receivers' certificates in the sum of $50,000 were issued, under orders of the court, to procure funds to maintain and operate the company's properties. Some sixteen months later plans for refinancing the company were formed by its directors and stockholders, pursuant to which, in March of 1922, they authorized the execution of a trust mortgage on the properties of the company to secure a bond issue of a million dollars. These plans were submitted to the court, and on January 6, 1923, an order was entered approving them and restoring to the company conditionally, as appellee contends, but unconditionally, as appellant contends, at the close of business on January 31, 1923, the properties of the company, not including its notes, accounts receivable, and investments in bonds. The effective date of this order was extended by subsequent orders, and on March 12th the company took possession of the property and began to operate it. The mortgage was executed, but the bonds were not issued until May of 1924. In the early

part of 1925 the court ordered the receivers to repossess themselves of the property upon the ground that the terms of the order of restoration had not been complied with. At the same time the property was ordered sold, and a special master was appointed to sell it and to hear and determine claims against the company.

In July of 1925 appellant filed a cross-bill in the proceeding, praying that the bonds issued and outstanding under the mortgage be adjudged a first lien upon the property described in the mortgage. The court decided that the mortgage had never become effective, and that the holders of receivership certificates took precedence over the holders of the bonds in the distribution of the estate. From this order appellant was allowed an appeal upon the severance of its claim from the claims of a number of other creditors similarly situated.

The bonds which are held by appellant and by others whom it represents on this appeal, so far as the record shows, were issued in consideration of assignments to the trustee of prereceivership claims against the company. The question presented to us is whether these bonds are entitled to priority over the receivership certificates in the distribution of the estate. It depends for its solution on the order under which the certificates were issued, as also on the effect to be given the order of January 6, 1923, and the action of the company thereunder.

[1] It is admitted that it is within the power of a court of equity to give a proper receivership indebtedness precedence over unsecured claims. The order authorizing these certificates provided that they should "be in the form and tenor comparable to securities of this character as heretofore approved by this court," and should "be given the priorities customarily accorded to such securities by law." On the face of the certificates, it was stated that they were entitled to the benefits and securities specified in the order, and that, in the event of the sale of the property of the machine company or the property in the hands of the receivers, "this certificate shall be paid in full, with interest at or before the confirmation of any such sale." These provisions are explicit enough in their purpose, we think, to give the certificates a preferential status against unsecured claims.

As respects the effect to be given the action of the company under the order of January 6th, it is to be observed that the order stated that the receivership purposes had been "substantially accomplished"; that the creditors, stockholders, directors, and officers of the machine company had proposed a plan of refinancing which met with the approval of the interested parties and made possible the protection of the several interests involved "without the continuance of the receivers in complete possession and control of such business"; that the plan provided for the payment or settlement of all unpaid claims of creditors which were "outstanding prior to the receivership, such payment being accomplished primarily through the issuance of first mortgage bonds" of varying maturities in a total amount at no time to exceed $500,000 outstanding; and that, "in addition to that portion of these bonds to be used in settling creditors' claims," a part of the remaining bonds would be used for providing funds for operating the business without recourse to current assets held by the receivers. It further stated that the current assets amounted to more than $156,-000, that the outstanding ascertained liabilities of the receivers amounted to about $140,-000, and that one of the receivers was to act as general manager of the company; and it directed the receivers to restore to the custody of the company certain property, not including the current assets, consisting of notes, accounts receivable, and investment in bonds, but provided that, if the ratio of retained assets to the retained liabilities of the receivers on January 31st should be less favorable than shown, the receivers should retain possession and control of sufficient work in progress and its proceeds to restore the ratio. It was contemplated that the current assets would be used to pay receivers' debts; but the order required the receivers to keep informed as to the progress of the company's business, and, in the interest of receivership creditors, provided that the court, "at any time prior to the final discharge of the receivers," might resume possession of any or all of the properties restored to the company.

[2] Appellant contends that, while the court could take back the property under this order, it could only be taken subject to the mortgage lien that in the meantime had been fixed upon it. The cases upon which it relies in support of this contention, Sheilds v. Coleman, 157 U. S. 168, 15 S. Ct. 570, 39 L. Ed. 660, and Davis v. Duncan (C. C.) 19 F. 477, are, in our opinion, inapplicable; for, aside from other distinguishing features, there was in each of those cases an unconditional restoration of the property, whereas here authority for the mortgage was obtained on the condition that, if executed, it should be subject to the power of the court to retake the

property at any time, if necessary, to protect or pay the claims of receivership creditors. Fairly construed, this meant, we think, that the court reserved to itself the power to give these claims precedence over any mortgage that might be executed.

[3] Another reason why the mortgage bonds cannot be given the status of lien claims, is that the refinancing plans and the order of restoration contemplated that the effectiveness of the mortgage would depend upon subsequent conditions that were never performed. The prereceivership claims were to be paid "primarily through the issuance of first mortgage bonds"; and the refinancing plans contemplated that holders of these claims would assign them to the Lima Trust Company and receive therefor bonds of equal amount. This is shown in the management's letter of March, 1922, to the creditors of the company, in which it was stated that the plan was that the creditors would procure the discharge of the receivers by surrendering their claims for mortgage bonds; that the bonds would be 7 per cent. bonds, secured by a first lien on property then owned or later acquired by the company; that $200,000 of the bonds were to mature in two years, $300,000 in five years, and $500,000 in ten years, no more than $500,000 to be outstanding at one time without the approval of the bondholders; that the two-year bonds were to be exchanged for bank claims, the five-year bonds for other claims, and the ten-year bonds to be sold and the proceeds applied to the retirement of the earlier maturities. Moreover, the forms of assignment obligated the trust company to reassign the claims, unless there was delivered to it, as trustee, an assignment of claims by creditors of the machine company and holders of receivers' certificates in such an amount as would "make possible the lifting of the receivership by the company." Less than 48 per cent. of prereceivership creditors actually agreed to take bonds; the bonds were not issued for more than a year after their authorization; and the general manager of the company, as late as December of 1923, in a letter to one of the creditors, stated that the matter had not been consummated sooner because the particular creditor and others had not seen fit to consent to the plan.

It thus appears that the purpose of those engaged in reorganizing the company was to make the effectiveness of the reorganization, and therefore the mortgage, contingent upon the exchange of bonds for all outstanding prereceivership claims, or at least a sufficient number of them "to lift the receivership." This was not done. In this situation the creditors who accepted bonds could have surrendered them and required the trustee to reassign to them their claims, because, after full opportunity therefor, there had been no performance of the conditions upon which the mortgage was to become effective. The court we think had no lesser right than these creditors; and in this view of its power, it is not material whether the notes, accounts receivable, and investment in bonds retained by the receivers, with the proceeds from work in progress, if necessary, would have proved sufficient, if prudently administered, to discharge the receivership obligations. It is enough that the conditions upon which the mortgage was to become effective were never performed, in which circumstances the court rightly held that it was not effective even as to those who had accepted the bonds.

[4] The claim of George Merriman for royalties under his patent is not before us on this record. Demand was made upon him by appellant to join in the appeal from the decree of the District Court. He failed to respond to the demand, and an order of severance was entered against him. No separate appeal from the decree was taken by him, and he cannot be heard in objection to it. The "Stephen Morgan," 94 U. S. 599, 24 L. Ed. 266, and Cherokee Nation v. Blackfeather, 155 U. S. 218, 15 S. Ct. 63, 39 L. Ed. 126.

The decree is affirmed.