SEYMOUR, Circuit Judge,
concurring.
I agree with my colleagues that the Supreme Court’s decisions in Cherokee Nation v. Journeycake, 155 U.S. 196, 15 S.Ct. 55, 39 L.Ed. 120 (1894), and Delaware Indians v. Cherokee Nation, 193 U.S. 127, 24 S.Ct. 342, 48 L.Ed. 646 (1904), control the outcome of this controversy. I therefore concur in the judgment. I write separately because I believe the majority unnecessarily denigrates the contrary position of the Delaware Tribe and the Department of Interior, which rely on the long and proud history of the Delaware Tribe’s relations with the federal government to argue that the Tribe maintained its tribal *1088 sovereignty.[1] It is only after a very careful and particular examination of the Supreme Court’s decisions in Journeycake and Delaware Indians in conjunction with an equally careful examination of the treaties and agreements they interpret, that one must conclude this controversy should be resolved in favor of the Cherokee Nation.
Contrary to the position adopted by the majority, I am not persuaded the terms of the 1867 Agreement between the Cherokees and Delawares were in fact, or had to be, completely consistent with the specific terms outlined in the 1866 Treaty between the Cherokees and the United States. The 1867 agreement was between two sovereign powers, one of which, the Delaware Tribe, was not bound by the Cherokee Treaty with the United States. In Delaware Indians, the Supreme Court indicated as much. The Court noted that while the 1867 Agreement between the Cherokees and Delawares was made in contemplation of the terms laid out in the 1866 Cherokee Treaty, the treaty should not be deemed to control in determining the terms and rights allocated in the 1867 Agreement. Delaware Indians, 193 U.S. at 134-35, 24 S.Ct. 342. The Court stated that
the care with which [the agreement] was made and the evident intention of the parties to deal at arm’s length with full knowledge of their respective rights and aims, leaves little to be gained from [the 1866 Cherokee Treaty and 1866 Delaware Treaty] as an aid to construction, except as a means of placing ourselves in the situation of the parties when the contract was signed and delivered.
Id. Hence, instead of viewing the 1866 Treaty as an exacting template against which to determine the Delawares’ tribal status, the Supreme Court viewed the treaty as a general guide for determining the nature of the agreement between the Cherokees and Delawares.
Nor can it be said that the 1867 Agreement was entirely consistent with the terms set out in the 1866 Treaty. The Delawares’ two payments to the Cherokee Tribe did not fit neatly within the payments described in either the preservation or incorporation option laid out in Article 15 of the treaty. See Journeycake, 155 U.S. at 196-98, 200-02, 15 S.Ct. 55 (setting out Article 15 of the Cherokee Treaty and the terms of the 1867 Agreement). Similarly, the 1867 Agreement’s language did not explicitly mirror the language laid out in either treaty option. Rather, the agreement seemed to mix and match language appearing in both the incorporation and preservation options of Article 15 of the treaty. The 1867 Agreement spoke of “looking to a location of the Delawares upon the Cherokee lands,” Journeycake, 155 U.S. at 200, 15 S.Ct. 55, which is indicative of the preservation option. Indeed, the Court in Journeycake stated that the preservation option was one in which a tribe merely located itself “within the limits of the Cherokee Reservation.” Id. at 204, 15 S.Ct. 55. However, in the same sentence in which the 1867 Agreement spoke of locating the Delawares upon Cherokee lands, the agreement also spoke of consolidating the Delaware Tribe with the Cherokee Nation. Id. at 200, 205, 15 S.Ct. 55. Similarly, the 1867 Agreement’s last paragraph also contained language mixing the preservation and incorporation options. Some language mimicked that appearing in the treaty’s preservation op *1089 tion which ensured that “preserved” tribes would be afforded the same rights as native Cherokees, while at the same time the 1867 Agreement’s last paragraph used the word “incorporated,” which can be directly ascribed to the incorporation option in the treaty.[2]
In reviewing the varying language which appeared in the 1867 Agreement between the Cherokees and Delawares, the Supreme Court indicated its belief that the Delawares incorporated themselves into the Cherokee Nation. Journeycake, 155 U.S. at 216, 15 S.Ct. 55; see also Delaware Indians, 193 U.S. at 135-37, 143-44, 24 S.Ct. 342. Instead of giving weight to the agreement’s language stating that the Delawares were intending to locate their tribe on Cherokee lands, the Court focused on the agreement’s language which spoke of the Delawares’ consolidation with the Cherokees. Journeycake, 155 U.S. at 213, 15 S.Ct. 55. Likewise, in reviewing the relevance of the Delawares’ two payments to the Cherokee tribe, the Court did not deem the second payment to be for a distinct set of lands under the preservation option of Article 15. Rather, the Court construed the land payment as a means by which the Delawares secured for themselves an allotment position, should the Cherokee lands be allotted in the future. Id. at 215, 15 S.Ct. 55. The preservation of an allotment interest for tribes settling on Cherokee land, whether by ineorpo-ration or preservation, was not mentioned in any regard in the 1866 Cherokee Treaty. Thus, although the terms of the 1867 Agreement did not fit neatly within either option outlined in Article 15 of the 1866 Treaty, the Supreme Court nonetheless decided the Delawares had opted for incorporation. The Court reached this decision by attributing more weight to the agreement’s incorporation language than to the language which implied preservation, and by virtue of the Delawares’ failure to obtain separate land within the Cherokee Reservation. Journeycake, 155 U.S. at 205-06, 213, 15 S.Ct. 55; see also Delaware Indians, 193 U.S. at 135-37, 144, 24 S.Ct. 342. The reason for this conclusion may have been in part due to the litigation position taken by the Delawares. In this regard, the Complaint filed in Journeycake by the Delawares asserted that under the 1867 Agreement, the Delawares had “abandoned their separate tribal organization.” Aplt. supp. br., Second supp. add. at 8.
In sum, I am ultimately compelled to conclude the Supreme Court determined in Journeycake and Delatvare Indians that the Delaware Tribe incorporated itself into the Cherokee Nation and abandoned its tribal sovereignty when it entered into the 1867 Agreement. Accordingly, it is irrelevant that the subsequent history of the Delaware Tribe’s relations with the federal government and the Supreme Court’s dic *1090 ta in Delaware Tribal Business Comm. v. Weeks, 430 U.S. 73, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977), on which the Department of Interior’s 1996 decision in favor of the Delawares relied, arguably indicate to the contrary. See Weeks, 430 U.S. at 77, 97 S.Ct. 911 (“Despite their association with the Cherokees, these Indians, called ‘Cherokee Delawares’ ... have over the years maintained a distinct group entity, and are today a federally recognized tribe.”).
I therefore agree that we must REVERSE.

. Indeed, the Department of Interior relies on the nearly 100 years of administrative practice of recognizing the Delaware Tribe to support its position that the Delawares remained a distinct tribal entity. See Aplt. app. at 241-266 (Department of Interior 1996 Memorandum listing in detail its many years of interacting with Delawares as a district tribe).

. As a point of comparison, the 1869 Agreement between the Shawnees and the Cherokees is similarly inconsistent with the 1866 Cherokee Treaty. The terms of that agreement by no means followed anything along the lines detailed in the 1866 Treaty, as acknowledged by the Supreme Court in United States v. Blackfeather, 155 U.S. 218, 15 S.Ct. 63, 39 L.Ed. 126 (1894). There the Court examined the terms of the 1869 Agreement and commented that the Shawnee agreement neither contained a provision for the purchase of homes nor a provision for the payment of money into the Cherokee national fund. Id. at 220, 15 S.Ct. 63. Nonetheless, in looking at the language in the 1869 Agreement, which included a statement that the “Shawnees shall abandon their tribal organizations,” id., and language which followed almost exactly the incorporation language appearing in Article 15 of the 1866 Treaty, id., the Court determined the Shawnees were incorporated into the Cherokee Tribe and should be afforded the same rights enjoyed by native Cherokees.