HAMMOND ET AL. *v.* UNITED STATES (No. 2785)[1]

FROZEN SEA HERRING.
　　In the provision of paragraph 1656, Tariff Act of 1922, for free entry of "Fresh sea herring and smelts and tuna fish, fresh, frozen or packed in ice," the language "fresh, frozen, or packed in ice" does not modify sea herring; and frozen sea herring are not free under this paragraph but dutiable under the provision of paragraph 717 for "Other fish, not specially provided for." *United States* v. *Fenton Co.*, 13 Ct. Cust. Appls. 538. This conclusion is not changed by showing that no fresh herring are imported, or that fresh and frozen fish are different things commercially.

United States Court of Customs Appeals, November 19, 1926

APPEAL from Board of United States General Appraisers, G. A. 9132, T. D. 41597

[Affirmed.]

*Waterhouse & Lockett (William E. Waterhouse* of counsel) for appellants.
*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

[Oral argument October 19, 1926, by Mr. Waterhouse and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:
The appellants imported, at the port of Newport, Vt., by rail, from Liverpool and Yarmouth, Nova Scotia, seven lots of herring, one of which was invoiced as "Frozen Sea Herring," four as "Frozen Herring," one as "Fresh Sea Herring Frozen," and one as "Fresh Frozen Sea Herring" and all of which are stipulated to have been

---

[1] T. D. 41876.

sea herring and to have been artificially frozen when imported. They were classified by the collector as other fish, not specially provided for, at 1 cent a pound, under paragraph 717 of the Tariff Act of 1922, and are claimed by the importers to be free of duty under paragraph 1656 of said act. There were also alternative claims under paragraphs 1459 and 1460 of said act, but, as these were not urged upon the attention of either the court below or this court, they will be considered as abandoned. The Board of General Appraisers, after a hearing, sustained the classification and from that judgment the importers have appealed.

Said paragraphs are as follows:

PAR. 717. Fish, fresh, frozen, or packed in ice: Halibut, salmon, mackerel, and swordfish, 2 cents per pound; other fish, not specially provided for, 1 cent per pound.

PAR. 1656. Fresh sea herring and smelts and tuna fish, fresh, frozen, or packed in ice.

The construction to be given to the paragraphs quoted has been carefully considered by this court in *United States* v. *Fenton Co.*, 13 Ct. Cust. Appls. 538. We there said, referring to similar provisions in the tariff act of August 5, 1909:

After a careful examination of the subject, including a review of previous tariff acts and various applicable decisions, we came to the deliberate conclusion that Congress in enacting paragraph 270 of the act had intended to distinguish between fresh mackerel and mackerel frozen or packed in ice, even though in some senses the latter might be called fresh mackerel; that is to say, that by using the terms fish fresh, fish frozen, and fish packed in ice, Congress had differentiated between these three classes of fish. In that conclusion we agreed with the Board of General Appraisers in that case.

The same distinction is found in paragraph 1656, as well as in 717 of the present act.

If Congress intended that sea herring frozen, or packed in ice, should be given free entry under paragraph 1656, it were unnecessary to insert the word "fresh" before "sea herring" in the paragraph as first enacted by the House. The insertion of that word at the beginning of the paragraph, and its retention where it was first placed by the House, clearly indicates that Congress intended to continue its former distinction between fish fresh, fish frozen, and fish packed in ice. The first use of "and" in the paragraph also makes against the importers' contention.

In view of all this it must be held that fresh sea herring are the only herring entitled to free entry under the paragraph and that sea herring which have been frozen or packed in ice are not entitled to that favor.

On further consideration, we are quite content with this construction of the legislative language used in the paragraphs in question and find no compelling reason suggested by appellants here which would lead us to come to a different conclusion, in so far as the language and grammatical construction of the paragraphs involved are concerned. It might only be added, in addition to what was said in the *Fenton* case, *supra*, that the distinction there pointed out

between "fresh" and "frozen" herring, or herring "packed in ice," was one which had existed in a tariff sense for many years and under various tariff acts. *In re Lynch & Co.*, T. D. 25430, 7 Treas. Dec. 1078; *United States* v. *Perry*, 171 Fed. 303; *In re Freeman & Co.*, Abstract 25838, 20 Treas. Dec. 1243.

But appellants contend that the judgment rendered by this court in the *Fenton* case, *supra*, was upon a record containing the report of the classification made by the collector only and without a knowledge of the particular facts incident to the importation of sea herring. Without conceding the correctness of the legal construction placed by this court upon the language of the paragraphs in question, appellants present here a very considerable record of testimony offered before the court below, and contend that upon a consideration thereof a different conclusion is now necessitated from that arrived at in the *Fenton* case, *supra*. A brief résumé of this testimony is therefore required.

Irving M. Atwood, a wholesale commission dealer in fish, at Boston, Mass., from 1905 until 1923, stated in substance that imported herring came principally from Nova Scotia and Newfoundland; that the former, when imported, were "mainly artificially frozen" and the latter "mainly naturally frozen;" that he had never seen any imported herring that were not either frozen or packed in ice, except such as were cured, salted or smoked, and that it was not practicable to handle them otherwise; that the term fresh herring, in the trade, meant herring that had not been frozen or cured in any way; that some herring, caught close to shore, have been imported without ice and that there are such fresh herring in the markets of this country; that a delivery of frozen herring, in the trade, would not be a good delivery of fresh herring; that herring which have been frozen are denominated in the trade as frozen herring.

Frederick A. Rich, engaged in the wholesale commission and fish business for 35 years throughout the United States, testified that the season for importing and selling Newfoundland and Nova Scotia herring was the winter months; that, so far as the knowledge of the witness goes, all Newfoundland herring are imported naturally frozen and all Nova Scotia herring artificially frozen; that herring do not come into this country from foreign ports absolutely fresh and without icing or freezing; that some fresh herring are landed from American boats at nearby harbors, without icing; that it is not commercially possible to handle imported herring without icing or freezing; that, in the trade, the term "fresh herring" means herring that have not been frozen.

Ulysses G. Barter, a fish curer since 1890, at Chelsea, Mass., testified, as to methods of importing herring, substantially the same as the preceding witness. He further stated, as to commercial

designation, that the term "fresh herring" meant in the trade "a herring packed in ice or else fresh, the same as would be caught in any small boats around the shore here," and that it did not include frozen herring; that he had never heard of any foreign-caught herring being imported without being packed in ice or frozen, but some years ago had handled fresh domestic herring.

John A. Matthews, in the wholesale fish business throughout the United States for 29 years, corroborated the preceding witnesses and stated that, in his experience, all herring imported were frozen, except a few shipments packed in ice; that fresh herring, under normal conditions in the summer time, will spoil in two or three hours; that some vessels from Boston and Gloucester fish in Canadian waters and bring in herring packed in ice; that to his knowledge and belief there are no herring imported which are not either packed in ice or refrigerated; that frozen fish are considered as cold-storage fish and are not sold as fresh fish.

Harden F. Taylor, a scientist and later connected with the Atlantic Coast Fisheries Co., testified that tuna fish were never imported fresh or frozen but always packed in ice.

Admitting the facts to be as shown by this testimony, the argument is made that as there is practically no such thing imported as fresh herring, the Congress certainly did not intend the language of paragraph 1656 to include only fresh herring. The best way of arriving at the intent of the Congress is by a consideration of the language used by it. Here, as we have attempted to point out in *United States* v. *Fenton, supra,* the language used by the Congress is plain and unambiguous. The Congress must be presumed to have known of the distinction long existing between fresh and frozen fish, and to have legislated in the light of such knowledge. If it chose to provide, in said paragraph 1656, for a commodity which did not exist, that is not a matter of judicial concern. We must take the law as we find it written. There is nothing, in our opinion, in this phase of the testimony, which calls for any departure from the judgment announced in *United States* v. *Fenton, supra.*

Nor is there any proof of commercial designation presented here which necessitates a different construction. Conceding, for the argument, that the evidence offered is sufficient to prove commercial designation, it shows only that, in the trade, frozen herring is not known as fresh herring. The herring imported here being concededly frozen, this proof avails nothing to the appellants.

In view of these considerations, the judgment of the court below is *affirmed.*