UNITED STATES *v.* SANDOZ CHEMICAL WORKS (No. 3087)[1]

---

[1] T. D. 43119.

United States Court of Customs Appeals, November 30, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.
*John G. Lerch*, amicus curiæ.

[Oral argument October 2, 1928, by Mr. Lawrence, Mr. Brown, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported certain coal-tar colors known as xylene milling blue BL concentrated, azo rubinol 3 GS concentrated, and chloramine blue 3 G concentrated on June 29, June 25, and August 3, 1925, respectively. These were classified by the collector at 7 cents per pound and 45 per cent ad valorem, under the provisions of paragraph 28 of the Tariff Act of 1922, the weight being determined by a computation made by the appraiser, based on the lowest known commercial strength of the merchandise, multiplied by the commercial strength of the merchandise, when imported. The importer protested, claiming the imported material should be assessed with duty at only 7 cents per pound upon its actual weight, further claiming that no standards of strength had been established for said merchandise by the Secretary of the Treasury prior to the date of their importation, as is provided for by said paragraph 28. The court below sustained the protest and the Government has appealed.

The pertinent portions of said paragraph 28 are as follows:

PAR. 28. Coal-tar products: All colors, dyes, or stains, * * * all of the foregoing products provided for in this paragraph, when obtained, derived, or manufactured in whole or in part from any of the products provided for in paragraph 27 or 1549; * * * 45 per centum ad valorem based upon the American selling price (as defined in subdivision (f) of section 402, Title IV) of any similar competitive article manufactured or produced in the United States, and 7 cents per pound: *Provided*, That for a period of two years beginning on the day following the passage of this act the ad valorem rate of duty shall be 60 per centum instead of 45 per centum. * * * For the purposes of this paragraph any coal-tar product provided for in this act shall be considered similar to or competitive with any imported coal-tar product which accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner: * * * *Provided*, That the specific duty of 7 cents per pound herein provided for on colors, dyes, or stains, whether soluble or not in water, color acids, color bases, color lakes, leuco-compounds, indoxyl, and indoxyl compounds, shall be based on standards of strength which shall be established by the Secretary of the Treasury, and that upon all importations of such articles which exceed such standards of strength the specific duty of 7 cents per pound shall be computed on the weight which the article would have

if it were diluted to the standard strength, but in no case shall any such articles of whatever strength pay a specific duty of less than 7 cents per pound: * * * *Provided further,* That in the enforcement of the foregoing provisos in this paragraph the Secretary of the Treasury shall adopt a standard of strength for each dye or other article which shall conform as nearly as practicable to the commercial strength in ordinary use in the United States prior to July 1, 1914; that if a dye or other article has been introduced into commercial use since said date then the standard of strength for such dye or other article shall conform as nearly as practicable to the commercial strength in ordinary use; that if a dye or other article was or is ordinarily used in more than one commercial strength, then the lowest commercial strength shall be adopted as the standard of strength for such dye or other article: * * *.

On the trial below, and in the argument here, it is admitted that at the times of importation of these coal-tar colors they were not specifically named in any standards of strength adopted and theretofore promulgated by the Secretary of the Treasury. In T. D. 40192, 45 Treas. Dec. 588, promulgated May 17, 1924, the Assistant Secretary of the Treasury adopted and promulgated certain standards of strength under said paragraph 28, as follows:

| No. | Class index | Name of standard | Manu-fac-turer | Partial list of trade names of imported products commercially identical with each standard | Manu-fac-turer |
|---|---|---|---|---|---|
| 146 | S. 471 C. 590 | Chloramine blue 3G_____ | (S) | Polyphenyl blue GC_____ | (G) |
| 281 | (A) | Guinea fast red BL_____ | (A) | Wool fast red BL_____ Fast light red BL_____ | (B) (M) (By) |

In T. D. 40371, 46 Treas. Dec. 148, under date of September 17, 1924, the Assistant Secretary of the Treasury adopted and promulgated further standards, with the same headings, among which is found the following:

| 14J | C. 833_ | Wool fast blue BL_____ | (By) | Xylene milling blue AE, AE conc._____ | (S) |
|---|---|---|---|---|---|

After the importations now before us were made, the Assistant Secretary of the Treasury, by T. D. 41017, 48 Treas. Dec. 12, under date of July 11, 1925, promulgated further standards of strength, among which, under the heading "Additional names of dyes corresponding to dyes already adopted as standards," appear the following:

| 461 | (A)_____ | Guinea fast red BL_____ | (A) | Azo rubinol 3 GS conc_____ Fast light red B_____ | (S) (By) |
|---|---|---|---|---|---|
| 779 | C. 833_ | Wool fast blue BL_____ | (By) | Xylene milling blue BL conc_____ | (S) |

Again, in T. D. 41162, 48 Treas. Dec. 302, under date of November 9, 1925, the Assistant Secretary again promulgated "Additional names

of dyes corresponding to dyes already adopted as standards," and. therein appears the following:

| 232 | {S. 471 C. 590} Chloramine blue 3G | (S) | Chloramine blue 3G conc | (S) |
|---|---|---|---|---|

In these Treasury decisions, the various abbreviations are thus explained:

Class index: (A) Acid wood color. (S) Schultz number. (C) Color index number.

Names of manufacturers: (S) Chemische Fabrik Vorm. Sandoz & Co., Basel, Switzerland. (G) Anilinfarben und Extract-Fabriken Vorm. J. R. Geigy, Basel, Switzerland. (A) Aktien-Gesellschaft für Anilin-Fabrikation, Berlin, Germany. (B) Badische Anilin und Soda Fabrik, Ludwigshafen, Germany. (M) Farbwerke Vorm. Meister Lucius & Bruning, Hochst, Germany. (By) Farbenfabriken Vorm. Friedr. Bayer & Co., Leverkusen, Germany.

It is contended by the Government that the foregoing purported promulgations of May 17, 1924, and September 17, 1924, constituted the adoption of standards, under said paragraph 28, for the colors imported here. On the other hand, the importers claimed no such standards were ever adopted until after the respective importations, and that, to constitute such an adoption of standards, the imported colors must be specifically named in the promulgation of the Secretary of the Treasury. Further, it was claimed in the court below that even conceding the orders in question were in proper form to cover the colors in question, they were signed and authorized by the Assistant Secretary of the Treasury, and not by the Secretary, as the statute provides, and hence were nullities. The latter point is not raised in the argument presented to this court, and, hence, under the familiar rule, will be considered as abandoned. *Hammond et al. v. United States*, 14 Ct. Cust. Appls. 251, T. D. 41876.

In support of the classifications made by the collector, the Government, in the court below, called, among others, as a witness, Herman Arrow, a chemist in the United States appraiser's stores at the port of New York, who appeared to be qualified as an expert on the testing of colors and dyestuffs for commercial value, and who was familiar with the standards established by the Secretary of the Treasury under said paragraph 28. He testified that he had made tests of the imported materials, xylene milling blue BL concentrated and azo rubinol 3GS concentrated, and found that said azo rubinol 3GS concentrated was alike, "in all material respects with guinea fast BL, manufactured by the Aktien-Gesellschaft," a color named in said T. D. 40192 of May 17, 1924. He further testified that said xylene milling blue BL concentrated was "alike in all material respects with a

standard of wool-fast blue BL of Bayer," a color named in said T. D. 40371 of September 17, 1924. He then stated:

Q. Doctor Arrow, in making these tests, of xylene milling blue BL and azo rubinol 3GS, state whether you found them to conform to the commercial strength with respect to the results introduced, to the standards which you have just mentioned.—A. Yes, sir; I have found that these two dyes, xylene milling blue BL concentrated and azo blue 3GS concentrated, have conformed to those two standard dyes, except that azo rubinol 3GS concentrated was 222 per centum against the standards of guinea fast red BL, of Aktien-Gesellschaft, under the T. D. number which you have enumerated, and xylene milling blue BL concentrated is 250 per cent against the wool-fast blue BL standard of Bayer, the T. D. number of which you have also enumerated.

As we have heretofore said, the intent of Congress in framing said paragraph 28 was to protect the domestic dye industry. *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 447, T. D. 40613. In order to more fully carry this purpose into effect, the Secretary of the Treasury is authorized and directed to adopt a "standard of strength for each dye or other article which shall conform as nearly as practicable to the commercial strength in ordinary use in the United States prior to July 1, 1914." What meaning is to be attached to this, in order to carry out the purpose of the statute? Should it be held to compel the Secretary of the Treasury to specifically name each product which might, by any possibility, be imported into the country, under any name, before it can be assessed with a specific duty according to its strength, or is it to be held that if it is the same dye or article which has already been named as a standard by the Secretary, even though it bears another name, it shall pay duty according to that standard? We are convinced the latter view is the sound one. The Secretary of the Treasury is to fix standards, in this case, standards of colors. He said, by his promulgations of May 17, and September 17, 1924, that chloramine blue 3G (S), guinea fast red BL (A) and wool-fast blue BL (By), were standards for such colors, whenever the same might be imported. Subsequent to such orders, the appellee imported these colors. It is true, the names the exporter had adopted were dissimilar, but the products are shown to be the same. Why should the importations not be subjected to the duties intended by this statute? No reason is apparent.

Nor can it be justly argued that the importer is occasioned any hardship by such a construction. He is bound to know when he brings such a coal-tar product into the country, as is mentioned in said paragraph 28, that it is the legislative intent that he pay duty thereon according to the American selling price, "of any similar competitive article manufactured or produced in the United States," and that "any coal-tar product provided for in this act shall be considered similar to or competitive with any imported coal-tar product which accomplishes results substantially equal to those accomplished

by the domestic product when used in substantially the same manner." It is argued that the Secretary must adopt a "standard for each color." This is true, but a color is a color, not a name. A dye is a dye, not a designation. Where the counsel for appellee and the court below are in error is in assuming that the statute requires a standard to be fixed for each *imported* color or other coal-tar product. On the contrary, it will be noted, on examination of the language of the statute, that the standard required to be fixed is a standard for the color or other product, *whether domestic or imported,* which was in ordinary use in the United States prior to July 1, 1914, or has been introduced into the domestic market since that time.

It is insisted that such a ruling leaves to the collector in each instance the task and authority to determine and apply this standard to any imported color, as he sees fit. It is true the effect is to give to the collector and the appraiser the power to determine whether a certain adopted and promulgated standard covers a certain imported coal-tar product, covered by this paragraph, by chemical analysis, color, or dye tests, or otherwise. But what hardship is there in this so long as the importer may test the correctness of the ruling, by protest? The dutiable character of imported goods is continuously being determined by these officials, irrespective of the names by which importers may designate their goods. *Lee & Co.* v. *United States,* 15 Ct. Cust. Appls. 202, T. D. 42236. *Grauert* v. *United States,* 15 Ct. Cust. Appls. 271, T. D. 42466. *Factor* v. *United States,* 15 Ct. Cust. Appls. 401, T. D. 42570.

In the view we have taken of this statute it therefore becomes immaterial whether the various promulgations of the Secretary of the Treasury, giving the *names* of the colors imported here, were published before or after the importations. At best, this information must be held only to be advisory to the importer, and not required by the statute.

Complaint is made by appellee that, even if it be admitted standards for these imported materials had been adopted previously, the collector should have estimated duty on the basis of "the commercial strength in ordinary use" and not by "the lowest commercial strength," basing this argument upon the fact that there is no showing, by the record or otherwise, that the products in question were not in ordinary use prior to July 1, 1914, or what the ordinary commercial strength then was. In the absence of a showing, it will be presumed the collector and appraiser performed their various duties in this respect. If they failed to follow the letter of the statute, it devolved upon the protestants to show wherein they so failed. *Bush & Co.* v. *United States,* 14 Ct. Cust. Appls. 345, T. D. 41971 and cases therein cited. Obviously, there was more than one commercial strength of the colors in ordinary use in the United States at the times

of importation, as appears from the advisory return of the appraiser appearing in the record.

Much reliance is placed by appellee upon our judgment and opinion in *United States* v. *Sandoz Chemical Works*, 14 Ct. Cust. Appls. 21, T. D. 41542, as announcing a contrary rule. This is not our understanding of the case cited. In the *Sandoz* case, *supra*, all the goods, coal-tar products, were imported before any standards had been fixed by the Secretary of the Treasury. The court held that the standards finally adopted and promulgated were not retroactive, and, there being no standards adopted at the time of importation, duty could only be taken on the actual weight of the goods. It followed, naturally and logically, that the collector might not fix this duty according to the commercial strength of the merchandise; in other words, if standards had not been adopted, nothing could be done under that portion of the statute pertinent to the same. The judgment in that case was sound, but is not at all in point here.

Upon this record, the protest of the importer should have been overruled. Because this was not done, the judgment of the court below is *reversed* and the cause *remanded* for further proceedings in conformity herewith.