The judgment of the United States Customs Court is *affirmed.*

UNITED STATES *v.* F. W. MYERS & Co., INC. (No. 4320) [1]

---
[1] C. A. D. 168.

## 36

United States Court of Customs and Patent Appeals, April 16, 1941

*Charles D. Lawrence,* Acting Assistant Attorney General (*Frank X. O'Donnell, Jr.* and *Joseph F. Donohue,* special attorneys, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument December 12, 1940, by Mr. Donohue and Mr. Albert McC. Barnes]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division.

Merchandise consisting of "Vim Oat Mill Feed" hereinafter described, was assessed for duty by the collector at the port of Ogdensburg, N. Y., as ground oat hulls at "10 cents per one hundred pounds" under paragraph 730 of the Tariff Act of 1930.

The importer protested the collector's classification, claiming that the merchandise was properly dutiable at 10 per centum ad valorem under that paragraph.

The paragraph in question reads:

PAR. 730. Bran, shorts, by-product feeds obtained in milling wheat or other cereals, 10 per centum ad valorem; hulls of oats, barley, buckwheat, or other grains, ground or unground, 10 cents per one hundred pounds; dried beet pulp, malt sprouts, and brewers' grains, $5 per ton; soy bean oil cake and soy bean oil-cake meal, three-tenths of 1 cent per pound; all other vegetable oil cake and oil-cake meal, not specially provided for, three-tenths of 1 cent per pound; mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feedstuffs, 10 per centum ad valorem.

It appears from the record that the involved merchandise was imported into the United States from Peterborough, Ontario, Canada, where it was produced in the mill of the Quaker Oats Co.; that the Quaker Oats Co. manufactures "Quaker Oats" (commonly called "Rolled oats"), "Quick Quaker Oats," "ground oatmeal," and "steel-cut oatmeal" for human consumption; that the involved merchandise

is sold for animal consumption only, and is produced, according to the testimony of appellee's witness Thomas T. Gentels (superintendent of the mill of the Quaker Oats Co. in Peterborough, Ontario), as follows:

* * * The oats come first into the cleaning house, where they pass over a series of air separators and grading machines that remove the light oats, which are removed from the clean oats, which go on, then, to the drying pans, where they are pan-roasted; and, from pan-roasting, we impart the flavoring to the grains. After the roasting process has been completed, the oats come into the mill proper, when they go, first, to the dry oats grading system, where they are graded as to width and as to length. There are three separations, stout, slim, and large. The graded oats are then ready for hulling. *They go, first to the hullers, where the hull is removed from the oats.* The hullers are 48 inches in diameter. The bottom stone is stationary, the upper stone is revolving very fast. The oats feed in through the eye of the stone, and, passing through the outer rim of the stone, they up-end; and, in doing that, the top stone knocks the tip off the end of the oat. *The oats and the hulled oats pass from the hullers to where we remove the oat middlings, or the Banner feed, which consists of oat middlings, and oat shorts. The Banner feed goes, from this point, in one direction, and the hulls and groats continue on.* We then, with air aspiration, remove the hulls from the groats, and the unhulled oats that remain pass on then to the graders, where then the unhulled oats are removed and returned to the hullers for a second hulling. The groats are then ready for the manufacture of rolled oats or ground oatmeal. *The Banner feed and the hulls then are put together, joined together, and go to the mills where they are ground into "Vim Oat Mill Feed."* [Italics ours.]

The witness further stated that the involved merchandise is prepared by mixing together approximately 78 per centum of oat hulls and 22 per centum of "oat middlings and oat shorts" and grinding the mixture, and that the "oat middlings and oat shorts [termed "Banner feed" by the Quaker Oats Co., and hereinafter referred to as such] consist of pieces of oat germs, the hair from the groats, oat bran, and small pieces of oat groats removed in the milling."

It further appears from the record that the involved merchandise is fit for use and is used in its imported condition as animal feed; that it is used alone by dairymen as a "part of their dairy ration," and is also used mixed with other stock feed; and, according to appellee's witness Eric N. Boland, salesman for the Quaker Oats Co. was, at the time of the taking of testimony in this case, principally used mixed with other feedstuffs.

It is conceded by counsel for the parties that the involved merchandise is something more than oat hulls, ground or unground, and that it is, therefore, not dutiable as oat hulls at "10 cents per one hundred pounds" as assessed by the collector.

The trial court, after giving careful consideration to the evidence in the case, held that the involved "Vim Oat Mill Feed" was "in fact a stock feed"; that as it was produced by mixing definite proportions of oat hulls and "Banner feed" and grinding the mixture it

was not "obtained in milling" oats and, therefore, was not dutiable under the provisions of section 730, *supra*, for "by-product feeds obtained in milling" oats. In so holding, the court stated that the involved merchandise is "at least one manufacturing step removed from a by-product feed obtained in milling cereals. It is a manufactured article, produced from by-products obtained in milling cereal. The last grinding is no part of the milling of cereal." The court concluded, however, that the merchandise was dutiable at 10 per centum ad valorem under the last provision of paragraph 730 as "mixed feeds" consisting of an admixture of "grain products with * * * other feedstuffs." In this connection, the court said:

> It cannot be disputed that oat hulls come from oat grains, and therefore would constitute a grain product, and these oat hulls would still be a grain product after having been ground. They are mixed with Banner feed and therefore the product becomes a mixed feed consisting of a grain product and a feedstuff. It would be immaterial whether the mixture was made before or after the grinding took place.

and, accordingly, sustained the protests.

It will be observed that paragraph 730, *supra*, provides for "by-product feeds *obtained in milling* wheat or other cereals" at 10 per centum ad valorem, and that it also provides therein for "hulls of oats * * * ground or unground" at 10 cents per one hundred pounds, and for "mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or *other feedstuffs*" at 10 per centum ad valorem. [Italics ours.]

The first issue presented by counsel for the Government is whether the court was right in holding that the involved stock feed is dutiable under the last provision in paragraph 730 for "mixed feeds."

It will be observed that the court held that as oat hulls, ground or unground, were *grain products* and as they were mixed with "Banner feed" and the mixture ground the resultant product consisted of an admixture of a grain product on the one hand (oat hulls) and other feedstuffs ("Banner feed") on the other.

The difficulty with that holding of the court is that both the oat hulls and the "Banner feed" comprising the involved merchandise are grain products, that is, both are additional products or by-products produced in the milling of oats, and the statute does not provide for "mixed feeds" consisting of an *admixture of grains or grain products*, but, on the contrary, provides for "mixed feeds, consisting of an admixture of grains or grain products *with* * * * *other feedstuffs*," that is, feedstuffs other than grains or grain products, including "oil cake, oil-cake meal" and "molasses." [Italics ours.] We are unable, therefore, to concur in the holding of the trial court that the involved stock feed is dutiable under the provision for "mixed feeds" contained in paragraph 730, *supra*.

It is contended here by counsel for appellee that, should it be held that the involved merchandise is not dutiable under the provision for "mixed feeds" contained in paragraph 730, *supra*, as held by the trial court, it is properly dutiable at the same rate of duty—10 per centum ad valorem—under the provision in that paragraph for "by-product feeds obtained in milling" cereal oats as claimed in the protests.

In view of the fact that appellee did not file a cross-appeal and assign as error the holding of the trial court that the merchandise was not dutiable as a by-product feed obtained in milling oats under the first provision in paragraph 730, *supra*, counsel for the Government, relying upon our decision in the case of *R. C. Williams & Co., Inc.* v. *United States*, 26 C. C. P. A. (Customs) 210, C. A. D. 19, contends that this court is without authority to consider that issue.

In the *Williams* case, *supra*, it was held that as the Government, appellee, had failed to cross-appeal and make proper assignments of error, it was not entitled to raise in this court the question of the correctness of the trial court's ruling admitting certain documents in evidence over the objection of counsel for appellee.

It is further contended by counsel for the Government that our decision in that case is inconsistent with our decision in the case of *United States* v. *Astra Bentwood Furniture Co.*, 25 C. C. P. A. (Customs) 340, T. D. 49434, wherein it was held that, although an appellee failing to file a cross-appeal and to make proper assignment of errors is not entitled to a better judgment in the appellate court than he received in the trial court, "wherever a claim is made in a protest which does not afford to the original protestant a more favorable judgment, if it be sustained in the appellate court, such claim may be made and passed upon in the appellate court on the appeal of the other party, without the assignment of cross-errors."

It is well settled in the Federal courts that an appellee, in the absence of a cross-appeal and proper assignments of error, may not complain of alleged errors not jurisdictional in character. He is not entitled to a more favorable judgment in the appellate court than he received in the court from which the appeal was taken, and will be heard only in support of the judgment appealed from. *Canter* v. *American Insurance Co.*, 28 U. S. 306, 317; *Chittenden et al.* v. *Brewster et al.*, 69 U. S. 191; *The Maria Martin*, 79 U. S. 31, 43; *The "Stephen Morgan*," 94 U. S. 599; *Loudon* v. *Taxing District*, 104 U. S. 771, 774; *Cherokee Nation* v. *Blackfeather*, 155 U. S. 218, 221; *Bolles* v. *Outing Company*, 175 U. S. 262, 268; *Peoria Ry. Co.* v. *United States*, 263 U. S. 528; *United States* v. *Race Co.*, 22 C. C. P. A. (Customs) 327, T. D. 47362; *R. C. Williams & Co., Inc.* v. *United States, supra*, and cases therein cited.

The rule as stated and applied in the case of *United States.v. Astra Bentwood Furniture Co., supra,* had been followed by this court for many years, and, until the issue was raised in that case, had not been questioned by counsel for the Government.

Although there may seem to be some inconsistency between the rule applied in that case and that announced and applied in the *Williams* case, *supra,* we think that, so far as customs cases are concerned, both rules are salutary and may be applied without prejudicing the rights of either the Government or the importer.

We proceed, therefore, to consider whether the involved stock feed, produced by mixing 78 per centum of oat hulls and 22 per centum of "Banner feed" and grinding the mixture, was intended by the Congress to be covered by the provision in paragraph 730, *supra,* for "by-product feeds obtained in milling" oats.

Oat hulls and "Banner feed" are undoubtedly by-products obtained in milling oats, and "Banner feed" is probably covered by the provision for byproduct "feeds" obtained in milling oats contained in the first part of paragraph 730, *supra.* Oat hulls, however, are *eo nomine·* provided for in that paragraph and, therefore, were not intended by the Congress to come within the provision for "by-product *feeds* obtained in milling" oats. [Italics ours.] Oat hulls were also *eo nomine* provided for in the tariff acts of 1897, 1909, 1913, and 1922.

The dutiable status of ground oat hulls, mixed with oat bran and oat shorts known as "oatmeal feed" and used as stock feed, was raised under the tariff acts of 1897 and 1913.

In the case of *United States v. McGettrick* (decided by the United States District Court, District of Vermont), T. D. 26596, 10 Treas. Dec. 48, it was held that merchandise, described in the decision of the Board of General Appraisers (T. D. 25235, 7 Treas. Dec. 662) as so-called "Vim cattle feed, * * * consisting of oat hulls ground and mixed with oat dust, particles of meal, screenings, or other by-products from the manufacture of cereals for the table, and which are used as cattle feed," was not dutiable as a nonenumerated manufactured article as held by the board, but was dutiable under the *eo nomine* provision for oat hulls contained in paragraph 231 of the tariff act of 1897.

In T. D. 38150, 37 Treas. Dec. 110, under date of October 4, 1919, the Treasury Department held that a product apparently consisting of ground oat hulls mixed with other by-products obtained in the milling of oats was dutiable under the *eo nomine* provision for oat hulls contained in paragraph 192 of the tariff act of 1913, rather than as a nonenumerated manufactured article under paragraph 385 of that act as the Department had previously held in T. D. 37966, 36 Treas. Dec. 287.

At the time of the enactment of paragraph 730 of the Tariff Act of 1922, which, so far as the issues here are concerned, is substantially

the same as paragraph 730 of the Tariff Act of 1930, the Congress was informed by the United States Tariff Commission (see page 704 of the Summary of Tariff Information, 1921) that "by-products of milling—such as bran, shorts, middlings—[were] used chiefly as feed for animals," and that oat hulls were used "as a filler or roughner *in some grades of feed for live stock.*" [Italics ours.]

On page 705 of the Summary of Tariff Information, 1921, under the heading *"Important changes in classification,"* it is stated:

To the present specific provision for oat hulls, transferred from paragraph 192 of the act of 1913, has been added a clause relating to hulls of other grains. A new specific provision has been made [referring to paragraph 731 of H. R. 7456, which later became paragraph 730 of the Tariff Act of 1922] for dried beet pulp, malt sprouts, brewers' grains, *mill feeds*, and *mixed feeds*. The substantial extent of the import trade in these products and the fact that it has been difficult to determine their dutiable status, appear to warrant specific provisions. [Italics ours.]

Accordingly, although in paragraph 730 of the Tariff Act of 1922 the Congress provided for the first time for "by-product feeds obtained in milling wheat or other cereals" and "mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, and other feedstuffs," the legislative policy of classifying oat hulls as a separate tariff entity was maintained and oat hulls were *eo nomine* provided for in that paragraph. Furthermore, that policy was not changed when paragraph 730 of the Tariff Act of 1930 was enacted.

In the Summary of Tariff Information, 1929, it is stated, at page 1210, with reference to paragraph 730 of the Tariff Act of 1922, under the heading "DESCRIPTION AND USES," that "The by-products of milling, such as bran, shorts, middlings, and the by-products of other manufacturing operations as dried beet pulp, malt sprouts, and brewers' grains (dried) are used chiefly as feed for animals. *Hulls are used as a filler or roughner in some grades of feed for live stock.*" [Italics ours.] At page 1213 of that volume appears the following:

HULLS OF BARLEY, BUCKWHEAT, AND OTHER GRAINS

PRODUCTION.—No separate statistics are available. Hulls and mixed feeds, including by-products of cereal foods are usually reported together in production statistics.

On page 1217 of the Summary of Tariff Information, 1929, several cases are cited under the heading "DECISIONS," including an "abstract" of a Treasury Department ruling, which reads:

*Ground feed* consisting of oat hulls and meal, believed to be entirely derived from oats with the exception of a slight percentage of impurities, was held dutiable as a by-product feed at 15 per cent under paragraph 730, the decreased rate of 7½ per cent upon by-product feeds under the proclamation of the President (T. D. 40069) being held to be applicable only to by-product feeds obtained in the milling of wheat. (C. I. E. 4180.)

It appears that that ruling was contained in a letter addressed to the Collector of Customs at Portland, Maine, by the Assistant Secretary of the Treasury, and was distributed among customs officials by the Customs Information Exchange. It was not published as a Treasury Decision.

It is argued here by counsel for appellee that as paragraph 730 of the Tariff Act of 1922 was reenacted as paragraph 730 of the Tariff Act of 1930 without change, so far as the issues here are concerned, the Congress intended to approve that ruling of the Treasury Department which, it is argued, is a holding to the effect that a product made by mixing and grinding oat hulls and other by-products obtained in milling oats was dutiable under the provision for *"by-product feeds obtained in milling"* oats contained in paragraph 730 of the Tariff Act of 1922. [Italics ours.]

We are unable to concur in those views.

The merchandise there in question was assessed for duty by the collector as a by-product feed at 15 per centum ad valorem under paragraph 730 of the Tariff Act of 1922. The question as to whether it was a "by-product feed obtained in milling" oats within the purview of that paragraph was not decided by the Treasury Department. The sole issue before the Department was whether the proclamation by the President (T. D. 40069) decreasing the rate of duty on "bran, shorts, and by-product feeds obtained in milling *wheat*" from 15 per centum ad valorem to 7½ per centum ad valorem was applicable to the merchandise there involved, and the Treasury Department held that it was not. [Italics ours.] Obviously, that ruling is not sufficient to warrant a holding that the Congress intended that a product made by mixing oat hulls (clearly not a by-product *feed* for tariff purposes) and a by-product *feed* (such as "Banner feed") and grinding the mixture should be classified as a "by-product" feed "obtained in milling" oats, under paragraph 730 of the Tariff Act of 1930.

In view of the fact that the Congress has provided in paragraph 730, *supra,* for "by-product feeds obtained in milling wheat or other cereals" at one rate of duty and for "hulls of oats, * * * ground or unground," at another rate of duty, and as the involved merchandise is *not obtained in the milling of oats,* but, on the contrary, is prepared by mixing a *by-product feed* obtained in milling oats with another tariff entity—oat hulls—in the proportions hereinbefore stated and grinding the mixture, we are of opinion that the involved "Vim Oat Mill Feed" is not a *"by-product"* feed *"obtained in milling"* oats within the purview of paragraph 730, *supra.* [Italics ours.]

Each of the protests filed by appellee in the instant case consists of a printed form (of a type obviously intended to be used by counsel in other cases) having printed thereon the firm name of counsel for appellee and the statement that "The above claims severally and collectively are alternatively made under the paragraphs or sections

cited, both directly, and by virtue of the 'similitude' and 'component material of chief value' clauses of Par. 1559 of the Tariff Act of June 17, 1930, and under the rules relating to the ordinary meaning of words, the commercial designation of the merchandise, or the chief or principal use thereof," and, in addition to the printed matter appearing thereon, there are *typewritten* statements identifying the merchandise and claiming that it is properly dutiable at 10 per centum ad valorem under paragraph 730, *supra*.

Similitude is a question of fact to be determined from the evidence submitted by the parties and, in order to control the classification of imported merchandise, must be substantial as to material, quality, texture, or use. *Ringk & Co.* v. *United States*, 13 Ct. Cust. Appls. 126, T. D. 40960.

Although it is claimed in the involved protests, *in the manner hereinbefore set forth*, that the merchandise is dutiable at 10 per centum ad valorem either as "by-product feeds obtained in milling" oats or as "mixed feeds" under paragraph 730, *supra*, by virtue of the similitude provision of paragraph 1559 of the Tariff Act of 1930, there is nothing either in the decision or in the proceedings below to indicate that that issue was presented to the trial court, and as the issue was not raised in this court by counsel for either of the parties it will be considered as having been abandoned by counsel for appellee. See *Hammond et al.* v. *United States*, 14 Ct. Cust. Appls. 251, T. D. 41876, wherein it was held that an alternative claim in a protest *that merchandise was dutiable by similitude* had been abandoned because "not urged upon the attention of either the court below or this court." See also *United States* v. *Joseph G. Brenner Co.*, 19 C. C. P. A. (Customs) 105, T. D. 45243, and cases therein cited, and *M. H. Rogers, Inc.* v. *United States*, 21 C. C. P. A. (Customs) 560, T. D. 46989.

We must hold, therefore, on the record here presented, that the involved merchandise is a nonenumerated manufactured article. See *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963, and cases therein cited; *United States* v. *Swift & Co.*, 14 Ct. Cust. Appls. 222, T. D. 41706; *United States* v. *C. J. Tower & Sons*, 17 C. C. P. A. (Customs) 90, T. D. 43427. However, as it is not claimed in the importer's protests that the merchandise is dutiable as a nonenumerated manufactured article, we can do nothing more than reverse the judgment of the trial court without approving the collector's classification.

The judgment is *reversed*.

BLAND, Judge, Dissenting: I am in disagreement with the decision of the majority and I think the result reached is not only anomalous, but is arrived at by reasoning which I respectfully insist is unsound.

Paragraph 730 of the Tariff Act of 1930 is a very comprehensive one and was obviously intended to include almost every kind of imported animal feeds at a low rate of duty. Most of the articles contained

therein which have to do with grain or grain products were given a 10 per centum ad valorem duty. I separate paragraph 730 into eight provisions, and italicize the two with which we are here concerned:

1. Bran, [10 per centum]
2. shorts [10 per centum]
3. *by-product feeds obtained in milling wheat or other cereals*, 10 per centum ad valorem;
4. hulls of oats, barley, buckwheat, or other grains, ground or unground, 10 cents per one hundred pounds;
5. dried beet pulp, malt sprouts, and brewers' grains, $5 per ton;
6. soy bean oil cake and soy bean oil-cake meal, three-tenths of 1 cent per pound;
7. all other vegetable oil cake and oil-cake meal, not specially provided for, three-tenths of 1 cent per pound;
8. *mixed feeds, consisting of an admixture of* grains or *grain products with* oil cake, oil-cake meal, molasses, or *other feedstuffs*, 10 per centum ad valorem.

In holding that the importer's protest claim that the merchandise was dutiable under clause 3 as a by-product feed obtained in milling oats was without merit, and after reciting considerable somewhat immaterial legislative history, the majority says:

> In view of the fact that the Congress has provided in paragraph 730, *supra*, for "by-product feeds obtained in milling wheat or other cereals" at one rate of duty and for "hulls of oats, * * * ground or unground," at another rate of duty, and as the involved merchandise is *not obtained in the milling of oats*, but, on the contrary, is prepared by mixing a *by-product feed* obtained in milling oats with another tariff entity—oat hulls—in the proportions hereinbefore stated and grinding the mixture, we are of opinion that the involved "Vim Oat Mill Feed" is not a *"by-product" feed "obtained in milling"* oats within the purview of paragraph 730, *supra*, but, on the contrary, is, on the record here presented, a non-enumerated manufactured article. [Italics ours.] * * *

As I understand the above holding, its gist is to the effect that the imported merchandise is not a by-product feed obtained in milling oats, for the reason that it is a mixture of two by-products which are separately obtained in milling oats, although both products come from the same continuous process of milling the oats. Obviously, *if the two byproducts had come out together, the holding of the majority would have been different.* In my judgment, the imported feed is a by-product feed obtained from milling oats.

However, if it could be held upon good authority that the language employed by Congress in the enactment of paragraph 730, or language elsewhere in the act, does not cover the involved merchandise, it seems to me that the mandatory provision of the so-called similitude paragraph 1559 should be given application here.

While it has not been urged here by the importer, for reasons which are obvious, that the similitude provision should be resorted to, it certainly cannot be logically questioned but that it is our right and duty to consider the question. It is the settled rule of this court and the Supreme Court of the United States that the similitude

provision of the statute, which mentions no rate of duty, does not have to be pleaded in the protest. *Rice & Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 165, T. D. 38403; *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022; *United States* v. *M. Rice & Co. et al.*, 257 U. S. 536; and that it is the duty of every customs, "judicial," and administrative officer in construing a paragraph like the one involved—730—to apply the similitude provision as it would any other rule of construction. A thing that has the force of a rule of construction and which does not require pleading, cannot be waived or abandoned so as to warrant the failure of "judicial interpreters" giving it proper consideration.

In *Rice & Co. et al.* v. *United States, supra,* this court, after holding that it was not necessary to claim under the similitude paragraph, said:

When it is borne in mind that the similitude clause is in effect a part of and must be read in conjunction with every duty-levying provision of the act and that, as such, its single enactment makes for economy and simplicity of expression, so known to all, and that it levies no other rate or rates of duty than that expressed in the particular provisions of which it is in effect a constituent part, in this respect it differs not at all in principle from the one general levy of the rate or rates of duties prescribed in each paragraph of the act by the defining and limiting language of the enacting clause of the act, to wit:

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

If the rates prescribed by each paragraph are actually levied by one general provision of the act, why should not the uniform amplitude of each and every paragraph as prescribed by Congress be expressed by a single paragraph? In fact, paragraph 386 [the similitude paragraph] is not a duty-levying provision. It neither prescribes nor levies a single rate of duty. But it is a legislative rule of interpretation of the scope of every duty-assessing provision of the act. *It is a legislative mandate upon all collectors of customs and the administrative and judicial interpreters of the act as to the inclusiveness of each and every such paragraph and the consequently relative evidence in the application thereof.* As such, it should not more be pleaded than any other rule of interpretation, construction, or evidence. [Italics mine.]

The majority opinion in the instant case in holding that the similitude claim will be treated as having been abandoned, is based primarily upon the consideration that the question was not presented to the court below or to this court. The majority also set out the fact that the protest claim in the instant case is on a printed form, and reference to the form of the protest is italicized in the latter part of the opinion. There certainly is no authority for holding that a pleading, good in other respects, is bad because the matter is on a printed form. But, as I view it, this is beside the question. It is not necessary to plead it at all.

It is my understanding that the present holding that the similitude provision need not be considered reverses, though not expressly, the holding in the above-cited case of *Rice & Co. et al.* v. *United States,* that the similitude paragraph is a mandate to "judicial interpreters."

The majority have the right to reverse or ignore former decisions of this court, but it is not often that a decision of this court which has been sweepingly affirmed by the Supreme Court of the United States has been reversed or ignored.

When the case of *Rice & Co. et al.* v. *United States, supra,* which held that the similitude provision was a legislative mandate to "judicial interpreters," reached the Supreme Court of the United States— *United States* v. *M. Rice & Co. et al., supra*—the decision of this court was, in an opinion by Chief Justice Taft, sweepingly affirmed not only in its conclusion as to the lack of necessity of pleading the similitude paragraph, but it was affirmed in its reasons arriving at that conclusion. The holding of this court that the similitude paragraph was a rule of construction (rules of construction cannot be waived) was not *obiter dictum.* It was the basic reason for holding that the paragraph need not be pleaded in the protest. Furthermore, if it were *obiter dictum* the Supreme Court indulged the same *obiter dictum* in holding the paragraph to be "a rule of construction." After reciting the importance of the question and the conflicting decisions involved in one phase of the same, the Supreme Court said:

The part of paragraph 386 under consideration [the similitude provision] prescribes *a rule of construction applicable to every paragraph of the tariff,* imposing duty on specifically described articles. It is a general provision intended to enlarge the scope of each paragraph to include articles not specifically described but resembling articles specified. The collector must be taken to be familiar with the general provisions of the tariff act. When an importer specifies in his protest a paragraph under which he claims his importation should be classified, the collector should enquire not only whether the article comes within the paragraph named, but also whether it so resembles the articles specifically described therein as to require it to be classified thereunder. After satisfying himself that the article does not come within the specific description of the named paragraph, its resemblance to articles which do should be his "first inquiry." [Italics mine.]

The quoted words of paragraph 386 mention no specific rate. Any reference to them in a protest would be meaningless unless accompanied by mention of some taxing paragraph. It is the latter which taxes the article under the general rule of interpretation which these words furnish.

It is said thereby that resemblance is a question of fact, but it is one not very different from that involved in the classification of articles within the specific description of the paragraph. The object of the protest is to put the collector on inquiry not alone as to the law but also as to the facts which make the law applicable. *The reasoning of the Court of Customs Appeals meets our approval and the judgment is Affirmed.* [Italics except last word mine.]

The so-called similitude paragraph is mandatory and was designed to take care of such a situation as the majority thinks the instant issue presents with respect to paragraph 730. The mandate of paragraph 1559 is:

That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject

to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *

As before stated, the reason given by the majority for excluding the instant merchandise from the "by-product" feed provision is that it is a mixture of two by-products, one of which is separately provided for at a rate of duty different from that of mixed feeds or by-product feeds. If they had come out of the milling operation together without requiring that they be mixed, obviously there would be either an identity of material, texture, and quality, or a very great similarity. Certainly the use would be the same. The similarity of uses might depend somewhat on the percentages of the mixture, which in some instances might suggest the use of the by-product as an ingredient for making a mixed feed. The record in this case, however, shows that the by-product mixture imported may be and is advantageously used by itself as a stock feed. Horses have lived on it alone for 5 years. That is as much as you can say for certain well-known stock feeds raised on and fed directly from the farm. The fact that something else is sometimes also fed or sometimes used to make a balanced ration does not militate against the instant material being a "feed."

Indubitably, the circumstances of this case suggest that it is the duty of the court to consider the similitude provision of paragraph 1559, *supra*. The case of *C. J. Tower & Sons* v. *United States*, 25 C. C. P. A. (Customs) 408, T. D. 49486, although a case in which we declined to apply the similitude doctrine, supports the position that it should be applied in the case at bar. There, the imported merchandise consisted chiefly of oats "which contained too many foreign ingredients to be manufactured into human food." Before being manufactured the importation "contained a certain amount of barley, buckwheat, wheat, 'wheat seeds,' 'straw, thistle tops' and dirt" which were all ground up together. This is not the kind of material we have at bar.

There are two requisites prior to the application of the similitude rule: First, the statute expressly provides that it only applies to non-enumerated goods; second, the proof should show that the imported goods are similar in material, texture, quality or use to those which are provided for. The proof is abundant in this case to show that the importations at bar, are, if not identical, similar in all four respects required by the statute to goods which are specifically provided for in paragraph 730. No proof is required to show the characteristics of the goods with which we should compare the imported merchandise. The importer does not have to prove the characteristics of goods which are enumerated. This would be proving dutiable classification under the paragraph of merchandise not involved. The court is presumed to know the nature of goods intended to be directly included within the paragraph. The court may take judicial knowledge of the

inherent characteristics and uses of so common a material as by-products obtained from milling oats. *United States* v. *Post Fish Co.*, *supra*. It is commonly understood that by-product feeds produced by milling grains may include such substances as bran, kernels, broken bits, fuzz, hulls and the like, all ground up together. And their characteristics are not radically changed by the fact that they are not *mixed* in one milling operation.

It should be noticed that in the *Tower & Sons* case, *supra*, we called attention to the fact that Congress has evidenced an intention of providing a very low rate of duty upon most stock and poultry feeds. To hold that this is a nonenumerated manufactured article, dutiable at 20 per centum ad valorem, is, in my judgment, to double the duty intended by Congress, without adequate justification for such action.

It seems to me that the holding of the majority that the involved merchandise is not dutiable under paragraph 730 is a far-reaching one. It has not been disputed that under this holding no mixed cereal feed which has been obtained by separately milling the cereal ingredients can come within this provision. It is a matter of common knowledge, referred to in the Summary of Tariff Information, and elaborated upon in various stock feed publications, some of which importer cites, that there are numerous mixed cereal feeds such as mixtures of bran, cracked corn, and other ground or cracked cereals or portions of the same, which are used in enormous quantities daily in the feeding of stock and poultry. Is it possible that Congress in attempting to provide a low rate of duty upon stock feeds, in such a comprehensive paragraph as 730, has wholly overlooked this most important class of feed?